Good morning. May it please the Court, Mr. Sampson. I am Linda Foreman and I am representing the appellant here, Terminal Freezers. I'm going to go to the gist of the appeal. I think obviously we know that this is a cross motion for summary judgment and Judge Settle decided as a matter of law that what I'll call the hole in the roof exclusion precluded coverage here. And I want to hit that issue first since that seemed to be determinative with him. As the Court is well aware, the insurer here is arguing that the faulty construction, which was the failure to properly adhere the water vapor barrier to the interior of the concrete wall, allowed in water vapor outside air that subsequently rose and the ceiling in these facilities is like 33, 35 feet high. So it rose up that high, passed over the top of the ceiling, which has made up with the insulation and shafts aboard. And over time, as the experts agreed, they both used, both sides experts, the word condensation. The water vapor condensed, got into the insulation and over time froze. And US Fire's argument is that what I'll term the hole in the roof exclusion, it's often used, that term is used in the few cases that are out there and they're all really kind of lamed roofs. But just for this argument, we'll call it hole in the roof exclusion, applies because they say that the only way that ice damage can be covered is if it comes through a hole in the roof or the walls. And we submit that that's just, that leads to an absurd result, especially in light of the Let's just take a covered peril. No dispute that windstorm is a covered peril under virtually every insurance policy. Now you take a windstorm that hits a cold storage facility. Let's assume that it pulls a hole in the roof. Well, what happens? The outside air gets into the facility. Now, if that happens, you can the cold air is going right out. Well, what happens is exactly what happens. Calling maybe back a few years, remember before we had frost free refrigerators? Remember when your grandma or your mom, they had to defrost their refrigerator and you'd open up their freezer and it had frost and ice, you know, this cream containers? And so they melted that and it came down in water and then pretty soon, you know, it looked great. Well, that's exactly what will happen at a cold storage facility if a covered peril, an undisputed covered peril windstorm pulls a hole in the roof. That ambient air is going to come in and it is going to does not make sense for this particular exclusion, well, it's actually a limitation, to apply. It doesn't make sense in the course of just the normal experience that an average insured, in this case a freezer warehouse, would have with its business. The other thing is that So your contention is that even though the cause was not a windstorm but rather faulty construction, that ice would not be limited, the coverage would not be limited to the ice in the windstorm case and therefore it cannot be limited even though we have, it's caused by faulty construction here. If I understand the court's question, what I'm saying is that if we had the same situation except the ice was caused by a windstorm which allowed in ambient air, U.S. Fire's interpretation would say that that's not covered because under their particular exclusion, the ice has to enter through the opening in the roof. That's precisely what the exclusion, or the limitation says. That's how the ice has to get in. Well in the case of a windstorm, of course no ice is going to get in. This is, let me play out sort of my general impression of this. There's a policy, there's an exclusion for faulty workmanship, no doubt about that. No doubt. But there's an exception to that for a covered loss. Covered cause of loss. And so if I'm understanding your argument, it is that in fact the loss here is covered. That's precisely my argument. Judge Settle didn't agree with me. What he did was he found, of course, that as you just mentioned, there's faulty workmanship. And he said the only loss that ensued or resulted after the faulty workmanship was ice. You need to keep in between those mics so people can hear you. Alright, that the only loss that occurred from the faulty workmanship or resulted was the excluded ice. Because ice didn't come in through the roof or walls, therefore it's not covered. My argument, which he really never got to, was that the covered causes of loss were water vapor, freezing, condensation, and dampness of atmosphere. I raised those as issues and said that those are not excluded under any provision of policy. And in fact, U.S. Fire hasn't disputed that. I'm sorry, did you argue below that the clause is at least ambiguous? Yes. So go to the particular clause. I understand, of course, if the wind or the water came through the roof, then you'd be covered. If it came in as rain, Your Honor, and then it froze, which it most certainly will the minute they cover up the hole, it would be ice. And then it would be excluded under their argument because the ice didn't come through. Doesn't it depend on how the rain gets in or the water gets in? I'm not sure it would be excluded. That's really my question. If the rain comes through the roof and turns to ice, don't you then have, it's caused by rain, isn't it? No, I'm just trying to parse it out. As a policyholder, attorney, I would think it's covered. But I think if you look strictly at the language, it says that the ice has to come through. No. I'm looking at C1C1 in the policy, which is under the limitations. And it says that they will not pay for the interior of buildings that are damaged by ice and other things unless the building or structure first sustains damage by a covered cause of loss, which in yours is not because it's caused by faulty construction. So it looks to me like you can't, it looks to me like you're, because you're not, you don't have a covered cause of loss, you can't recover for ice that damages the interior of the building. Well, that's where we have the fundamental dispute. We say there is a covered cause of loss. We say that the judge made an error in not considering the four other covered causes of loss. What's the covered cause of loss? Condensation is one thing. Both of the experts agree that the water vapor came in through this, you know, the voids, and that it condensed, it froze in the insulation, and it turned to ice. Condensation is not excluded in any part of the policy. But I thought the district court sort of took one step back and said, well, what caused the condensation? It was caused by faulty construction. Well, that's right. But the faulty construction exclusion has an exception to it. If the faulty construction leads to a covered cause of loss, then the damages from the covered cause of loss are, in fact, covered. And what we are saying is that the faulty construction led to water vapor entry, which water vapor is not excluded, and the Blaine case is exactly on point on this. It's a Fourth Circuit case. And then, as the experts say, the water vapor turned to condensation. Condensation is not excluded. Where is condensation covered? Where is that a covered cause of loss? Can you talk through the policy? Oh, okay. Well, fundamentally with insurance coverage. If you can quote me chapter and verse, it would be helpful. You're saying it's not an exclusion, therefore it's a coverage. It's not excluded in the policy. You know, when we went to law school, we were taught when we read contracts that it's all right there in the four corners. Well, that's not true with insurance. It's not true with covered causes of loss in an all-risk policy. And that was my fundamental point. If you look at the insuring agreements here, the insuring agreements say we'll pay all risk of covered or all risk of loss except as excluded or limited. And as the commentators have said and as the courts have said, that means they cover everything unless it's specifically excluded. So in this particular case, you have to look at what the policy doesn't say, so to speak. You would go with the judge on part one, in other words, because it's a faulty workmanship. Absolutely. It's out unless. That's right. So then the next step. Unless it's a covered loss. Covered cause of loss. Covered cause of loss. And you would say there if it's not excluded. It's covered. It's covered. And U.S. Fire admits that every one of the four causes that I say are covered causes of loss, they don't disagree with that. They don't disagree. But what happened here is the court didn't quite get it, I guess. Didn't get where I was going with that. My fault. Okay. What he did is he went to the faulty workmanship, and then he looked at the exception, but he said I disagree with terminal freezers that any of the causes they identified are the real cause here. We think that the court says that he thinks that excluded ice was the cause. And to get there, he had to go through water vapor. He had to go through condensation. He had to go through freezing because ice is the final result. And that's, I think, what the Blaine case makes so much sense to understand. It is exactly like our case, exactly, except the water vapor rained down. Instead of freezing, it rained. And the evidence in the record here is that it's not a case that it's instantaneous where the water vapor comes in and it just freezes. It moves up, and it gets into the shafts to board. Then it gets into the thick insulation. And over time, it freezes. As the evidence in the record shows, when they took the insulation out, some of it was soaked and wet. It wasn't frozen. It is a process. And that's the point we try to make about the covered causes of loss, that there are at least four steps to arriving at the ice and insulation that are not excluded from the policy. And it just doesn't make any sense to say that once it finally becomes ice, it's excluded. I guess if my client had been lucky enough to find it while it was still wet, we wouldn't be here because there wouldn't be an ice exclusion. And that's the absurdity of the way this works. And that's why we submit that the court was in error when it decided on its own that the only cause of loss was an excluded one. It weighed all the evidence and said only the ice. Now, our next argument on that, of course, is that it's ambiguous, that the exclusion, the hole-in-the-roof exclusion, is ambiguous because of the identification of ice along with snow, sleet, dust, rain, that it needs natural elements. And there's a positive case law out there on that. But we cited the Machicha case out of Missouri, a district court case, a federal district court case that had gone up to the 8th Circuit and came back down, where the court... That was unreported, right? That was unreported. It does have some... We have so little case law here, we're both kind of stuck with that. Reaching out for what you can. You're down to about a minute and a half. Did you want to save some time for rebuttal? Yes, I'll save a minute, unless there are any more questions right now. I don't see any. Thank you for your argument. We'll hear from the carrier at this time. Please, the court. My name is Don Sampin, and I represent U.S. Fire. Could you speak up a little bit, counsel? I certainly will. There are two points made by Ms. Foreman, and they're open in her reply brief, that I'd like to address. The first one has to do with the efficient proximate cause here. The efficient proximate cause was a major issue at the district court before Judge Settle. Judge Settle ultimately agreed with U.S. Fire that the efficient proximate cause here was, in fact, faulty construction and not water vapor. That was a big point in Ms. Foreman's opening brief here in this court. By the time we get to the reply brief, Terminal Freezers has now agreed that the efficient proximate cause is, in fact, the faulty construction. So that sets aside that whole area of briefing. Are we down to whether what happened was a covered loss? Yes, we are, Your Honor. And let me focus on just one other point. Going to that covered loss issue, if I could refer to page 13 of the reply brief, and this gets to the heart of the issue, I believe. Ms. Foreman says in her reply brief, quote, an examination of the sparse Washington cases, including its unpublished decisions, proves that the resulting damage exception to the faulty workmanship exclusion, that the exception to the exclusion, she says, will not apply if the ultimate damage or cause of loss is specifically excluded by the policy. So the ultimate loss here, and the ultimate loss in this case, is ice. It's excessive formation of ice. How does the policy define ice? I'm not sure that there's a definition of ice in the policy itself, Your Honor. Let me ask the question another way. Anywhere in the policy, does it define ice as frozen condensation? I don't believe that definition is in the policy. And, in fact, where the word ice appears, it's in connection with natural elements, right? Well, no. It's not all natural elements. Rain, snow, sleet, ice, sand, or dust, whether driven by the wind or not. Sand, is that a natural element? I guess it's an element. It can be. Dust, is that? It can be or it might not be. So I would not concede that point, Your Honor. If you take her other point, which is you have to go to the covered loss, which is where we now are because we got rid of the faulty workmanship, that condensation and other, whether they're called precursors or the ultimate cause, as she characterized them, those are not excluded from coverage. Is that correct? They may or may not be, depending upon the circumstances, but let's assume for the moment that water vapor is not under these circumstances or that there's no specific exclusion for condensation. My point is it doesn't make any difference whether they're specifically excluded or not because we have a chain of causation here. At the outset of the chain, we have faulty construction. That's the efficient proximate cause, okay? It's not covered, subject to an exclusion. But the faulty construction itself is not covered. At the end of the chain, the ultimate cause of loss is ice. Now, we can talk about water. We can talk about condensation. We can talk about water vapor. But the expert report in the trial court talked about excessive formation of ice causing the damage. Ms. Foreman, in her opening brief in this case, talks about excessive formation of ice causing the damage. So at both ends of the chain of causation, we have excluded causes. What happens if Terminal Frasers had called you at a point before the ice begins forming and says, we've got damage to our building and it's only going to get worse because we've been up in upstairs and the insulation is just soaked and it's going to form ice at some point, but it isn't now? What happens there? Well, that may or may not be covered. But if we're just talking about water, I'm not sure that that would cause damage because the experts here said it was the weight of the ice, it's the accumulation of the ice in these vapor retarders that caused the damage. If it were just water, it might run off. I don't know. That's a different case. I'm sorry. What if there was ice and then the ice melted and turned into water, which did cause damage, covered or not covered? And we have the same faulty problem initially. If we have ice initially, if it's not the ice causing the damage, then the exclusion. It's the ice, but then it melts, and then it's ultimately the melting water that causes the damage, either because of weight or leaking out and doing something. I understand. If it's not the ice causing the damage, no damage caused by the ice, but water has caused the damage instead, I suspect that limitation C1c may not apply. I would have to work through the various provisions here, but it's quite possible that C1c would not apply. I can't tell you as I'm standing here if there would be coverage because I'd have to look at the other various provisions. But that, again, is not our case. Our case has to do with excessive formation of ice. So here we have, at the outset of the chain of causation, a non-covered cause, i.e. defective infrastructure. The damage to the building resulted from what? Did we have cracking of structures? We lost the insulation? It was the insulation and the vapor barriers being torn down, as I understand it, by the ice itself, by the weight of the ice. By the weight of the ice. That's right. If it had just been soaked, there might have been other ways of addressing the problem. There may not have been any damage. If it wasn't frozen inside, if the temperatures weren't so low inside, the water might just have run off. I don't know, but that's not our case. We're talking here about ice. And at the outset, there's no coverage. At the end of the chain, there's no coverage. And Washington case law is pretty clear that it doesn't matter what happens in between. You can have water vapor, you can have water, you can have all sorts of other stuff. It's not going to be covered. And for that proposition, I rely upon two cases that the parties have discussed here. One is the Wright case, the Wright v. Safeco case. And the other is the Bedford v. Safeco case. And both of these cases are very similar to each other, and they're very analogous to our situation. In both of these cases, there was a construction defect, which caused water leakage, which caused decay or mold. So that's the chain. In both cases, the court found that the construction defects at the outset of the chain was the efficient proximate cause and not covered. The policies in both cases had a similar type of ensuing loss or ensuing cause of loss provision in them, similar to our case. The court also found that the decay or the mold at the end of the chain was not covered. The insurance company in the case took a position that there was no coverage, as you might expect. There's a kind of a two-step thing, isn't it? One, what was the efficient proximate cause? And there seems to be agreement here that that was the workmanship. It's the workmanship, yes. The next question is whether it's a covered cause of loss. The next question is whether it's an ensuing covered cause of loss. That's right. That's the second question. Did the policy use that word, ensuing? It doesn't use the word suing. It talks about a resulting covered cause of loss. That's a word you've sort of added to it. We're talking about covered cause of loss, right? We're talking about a resulting. The resulting covered cause of loss. The policy talks about a resulting covered cause of loss. Was it the same language in the SAFCO policy? Very similar language in both of these other cases. I don't want to ignore your questions, Your Honor, but let me follow up on this discussion of these two cases. The insured in the Wright and the Bedford case both relied upon the water in the middle of the chain, just like terminal freezers is doing here. The insured said, well, the water's not excluded, so therefore it's covered, so there's got to be coverage here. In both cases, the court said no, no coverage. In the Wright case, the court said, and I quote here, the efficient proximate cause rule does not allow a claimant to focus on one covered cause out of a causal chain. And in the Bedford case, the court went a step further. These are both Washington Appellate Court cases. Bedford is a 2007 case. The court said the chain of causation is irrelevant because the ultimate event is an excluded peril, just like the ultimate event here, the ice, is an excluded peril in our situation. So it doesn't matter how long the chain, how many links to the chain there are, as long as the efficient proximate cause is not covered, as long as the ultimate cause of loss in our case, the ice, is not covered, there's going to be no coverage, regardless of whether there might be potentially covered events in between. If the damage here were fire, but the efficient proximate cause was faulty workmanship, would the fire be covered under this policy? The short answer is I don't know, Your Honor. It's an all-risk policy, isn't it? If you're suggesting that the ---- I'm not suggesting anything. I'm asking you a question. I understand. I need to understand the question. Does a defective construction cause the fire? Is that what you're suggesting? The court determines that the efficient proximate cause of this event was faulty workmanship, but the resulting cause, if you use these terms, was a fire. Is it covered? I suspect that if the ultimate cause of loss was the fire, my guess is, and it's only a guess because I haven't studied the policy with that question in mind, is that there may be coverage, Your Honor. But here, there's not because of limitation C1C, the provision that we've been talking about, that specifically refers to ice. Ice can be covered under C1C, but it's covered only if it enters through what Ms. Foreman has referred to as a hole in the roof or a hole in the wall. And in this case ---- Does your argument derive any strength from C1C1? C1C says it doesn't from ice unless, and then it tells us that the building or structure first sustains damage by a covered cause of loss, which you do not have here because it was construction, through which the rain, snow, sleet, ice, sand, or dust enters. Yes, I think if you look at that closely, it says a covered cause of loss to its roof or walls. So it's not just a hole in the roof. It has to be a hole in the roof that's covered by insurance. If the hole in the roof is covered by insurance and the ice enters through the hole in the roof, then the ice damage on the interior of the building is not excluded. Okay, that's how it works. Let me just address very briefly this question of whether or not ice is ambiguous here. Ms. Foreman relies upon the Machika case. Machika was construing a different provision, which was limited to rain, snow, and sleet. It was actually a coverage provision, and the court said in that particular case it construed ice, meaning ice caused by weather conditions. Judge Settle rejected that argument. In our case, I think he's right, of course, but I think there's other reasons why that argument is not a good one. Ms. Foreman, in other parts of her brief, has gone through the various exclusions and limitations with a great deal of care, and she's pointed out the various aspects of water, which sometimes is excluded depending upon the circumstances, sometimes it's not. There's a provision here that talks about ice damage to personal property in the open. There's another provision here that talks about damage to personal property caused by dampness of atmosphere. Both of those terms might suggest that if they apply to ice in section C1C, might suggest that this is ice caused by weather conditions. Those types of adjectives aren't used in this provision, and certainly the drafters of this provision knew how to limit ice to weather conditions if that was their intent. Under Washington law and under most states' law, it's inappropriate for the court to start importing adjectives where they're not appropriate by the context. Also, I would point out with respect to C1C, it appears to provide coverage for ice created by weather conditions, because we've just been talking about the hole-in-the-roof situation. If you have a hole-in-the-roof, the ice comes in through the hole-in-the-roof, that's probably going to be ice created by weather conditions. And if now you try to construe the exclusion as applying only to ice created by weather conditions, it simply makes no sense. So not only would you be importing adjectives that aren't warranted by the context, but you'd be importing ambiguity, which is not warranted by the context either. For those reasons, I suspect my time is almost up. I will rely upon the briefing with respect to our cross-appeal. Thanks very much. Thank you very much for your argument. Rebuttal? You have about a minute and a half. Just very short, just to hit some points. On Washington law, I stand by Washington law, because if you look at those cases, and it's not just Wright, there's Ide. They've really fallen to two categories, where the ultimate result was mold, which in each case, and Wright was one of these, the court said that the final result was specifically excluded by the policy. The other set of cases in Washington really relate to earth movement, where some of the ones up in Fur Island, where there were heavy rainstorms and then the earth moved, and there were exclusions specifically for earth movement, specifically for flood. So I submit that Washington law does not preclude a ruling in favor of terminal freezers here. I also wanted to respond to the court's question about damages. The water vapor came up, and so there are really no significant damages in the wall. The main damages were above the wall in the ceiling, and there are pictures in the briefs of the, as the experts call it, ice impacted insulation, which is several inches deep. And so the damages that were not related to the installation of the vapor barrier itself are in the insulation in Shasta Board at the top. It wasn't part of the installation. And I dispute the idea that soaking wet insulation is not damage. It loses its insulation capacity if it's soaking wet. So if we happen to play musical chairs right here and catch this before it turned to ice, soaking wet insulation is clearly damage. I also wanted to make... Might there have been some other way, though, of less costly way of addressing the damages if we just found the insulation was wet? Your Honor, that's pure speculation. I couldn't tell you because you can look at the pictures and I can look at the pictures. We never got to the issue of how it should be addressed. I wanted to make another point about Mechicha. If you look at the, I think it's footnote three there, you will see that the court said that it considered exclusion C1C, ice, and determined that it did not apply. Now I just want to bring it up that that did come up in that particular situation. And I wanted to also say that we have the other case, which I thought was very important, too, was from Louisiana. There are only really two freezer facility cases that either one I've decided. Both, I think, stand for the proposition that we should receive coverage here because of the Blaine case. And then in the Dawson case was another vapor barrier case. And what happened there was the water rained on the case. It wind up here over your top. Well, and that is... One last thing, EPC, I just want to put the kibosh on that. The reason we brought up EPC is that the other side argued that this was not fortuitous because the water vapor was something that was known out there. They admit at page 35 of their brief it is a known risk. And so our response was the EPC, which if that's true, then we could certainly argue that the water vapor was the efficient proximate cause.  Okay. Thank you. Thank you. Thank both sides for their arguments. It's a very interesting case. It will be submitted for decision, and the Court will stand in recess for the day.
judges: Hawkins, McKeown, Bybee